IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GEORGE P. REITZ and
KAREN K. REITZ,

                    Plaintiffs,

vs.                                              Case No. 08-4131-SAC

USDA, FARM SERVICE AGENCY,

                    Defendant.

MEMORANDUM AND ORDER

This case comes before the court on appeal from a final determination of the

National Appeals Division. The court has jurisdiction pursuant to 7 U.S.C. § 6912(e) and

6999. Plaintiffs' complaint additionally alleges Privacy Act violations by the Farm Service

Agency (FSA), which shall be separately addressed.

**Facts**[1]

The plaintiffs, George and Karen Reitz, own farmland in Leavenworth, County,

Kansas. On May 25, 1979, the plaintiffs borrowed $225,000 from the United States

Department of Agriculture and its Farmers Home Administration (now the FSA). In

connection with that loan transaction, the plaintiffs signed a Promissory Note and

granted a real property security interest in their Leavenworth County land to the United

States Department of Agriculture ("USDA").

On July 30, 1991, the plaintiffs restructured their loan by executing a Promissory

---

[1]Because the plaintiffs provided no statement of facts, these facts are taken from
defendant's statement of facts, as confirmed by the record.

Note, Shared Appreciation Agreement and coincidental real property security interests. Specifically, the restructured debt was $181,382.08 evidenced by a Promissory Note and Mortgage. The FSA wrote down the debt in the amount of $161,516.62 and that was evidenced by a Shared Appreciation Agreement and Mortgage. The Shared Appreciation Agreement was for a ten-year term and became due in 2001. The appreciation owed by the plaintiffs was calculated at $91,425.00. The loans to the plaintiffs thereafter became delinquent, since the plaintiffs have not made a voluntary payment since 1997. As a result the FSA noticed plaintiffs of its acceleration of those debts on April 4, 2008.

Over the past decade or more, the plaintiffs made a number of allegations against the FSA involving their loans. The plaintiffs filed an appeal with the National Appeals Division ("NAD") (Case No. 2005W000816) and on March 6, 2006, the NAD Director found that the FSA had sent the incorrect notices to the plaintiffs. FSA subsequently remedied that error by sending plaintiffs the correct notices.

In addition to the formal NAD complaint regarding debt acceleration, Mr. Reitz also made allegations of program discrimination and reprisal against the FSA. The complaints began in 1997 and continue through the present. At the time of the loan acceleration in April of 2008, none of the discrimination or reprisal complaints made by Mr. Reitz had been accepted by the FSA as valid.

Following acceleration of the plaintiffs' loan on April 4, 2008, the plaintiffs filed another appeal with the NAD (Case No. 2008W000501). This appeal raised only one issue: "We object to USDA-FSA's decision of intent to accelerate or continue acceleration of loans while our Civil Rights complaints are still pending as this goes

against USDA-FSA policy." A formal hearing was held on July 8, 2008, before a NAD

Hearing Officer. The NAD Hearing Officer affirmed the decision to accelerate the

plaintiffs' debt, finding that none of the discrimination or reprisal complaints made by Mr.

Reitz had been accepted by the FSA as valid. The plaintiffs appealed that decision to

the Director of the NAD, who affirmed the Hearing Officer's decision and the

defendant's acceleration. The plaintiffs sought reconsideration of the NAD Director's

decision and it was denied. Plaintiffs thus exhausted their administrative remedies

regarding this issue. The plaintiffs filed this suit on October 31, 2008,[2] seeking review of

the administrative decision, and alleging Privacy Act violations by the defendant.

**Administrative review**

 **Scope of Review**

  Reviews of agency action in the district courts are processed as appeals.

*Olenhouse v. Commodity Credit Corp.* 42 F.3d 1560, 1580 (10th Cir.1994).

In reviewing the final decision of a federal agency, the court applies the standards set

forth in the Administrative Procedure Act, 5 U.S.C. §§ 701-706. The court's scope of

review is narrow. *Maier v. EPA*, 114 F.3d 1032, 1039 (10th Cir.), *cert. denied*, 522 U.S.

1014 (1997). The standards permit the court to aside an agency's decision only if it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,"

or is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

  In reviewing the agency's decision, the "court is not free to substitute its own

judgment for that of the agency, but must instead uphold the agency decision if there is

---

[2]The United States does not argue that the complaint was prematurely filed.

a rational basis for that decision." *Northwest Pipeline Corp. v. Federal Energy Regulatory Comm'n*, 61 F.3d 1479, 1486 (10th Cir.1995). Under the substantial evidence test, the court considers conflicts in the record and specifically defines those facts which support the agency's decision. 5 U.S.C. § 706(2)(E).

> In assessing such a challenge, we may ask only whether substantial, not uncontested or incontestable, evidence exists in the record to support the result the [agency] reached. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). Under this standard of review, it is not our job to find facts afresh. Instead, we ask only whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support" the [agency's] decision. *Id.*; *see also Energy West Mining Co. v. Oliver*, 555 F.3d 1211, 1217 (10th Cir. 2009). In this respect, our job is something like the role of the instant-replay booth in football: the call on the field presumptively stands and we may overturn it only if we can fairly say that no reasonable mind could, looking at the facts again, stand by that call. So it is that we, like the instant-replay official, often affirm decisions that we might not have made ourselves. *See NLRB v. Interstate Builders, Inc.*, 351 F.3d 1020, 1028 (10th Cir. 2003).

*Laborers' International Union v. NLRB*, __ F.3d __ (10th Cir. Feb. 3, 2010). *See Olenhouse*, 42 F.3d at 1580 - 81.

 "Under the arbitrary and capricious standard of review, this court must give the agency's decision substantial deference." *Utahns for Better Transp. v. United States Dep't of Transp.*, 305 F.3d 1152, 1174 (10th Cir. 2002). This means that the court may not overturn an agency decision if the agency "demonstrate[s] that it considered relevant factors and alternatives after a full ventilation of issues and that the choice it made was reasonable based on that consideration." *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1453 (10th Cir.1994).

Additionally, the court applies the harmless error rule in reviewing administrative proceedings. *All Indian Pueblo Council v. United States*,  975 F.2d 1437, 1443 (10th Cir. 1992); *see* 5 U.S.C. § 706 (1996). Thus even where an agency fails to comply strictly

with its rules or requirements, its decisions will not be set aside absent prejudice to the plaintiff. *Ahern v. Webb*, 268 F.2d 45 (10th Cir. 1959). The burden of showing prejudice is on the party claiming injury from the erroneous rulings. *Id. See Palmer v. Hoffman*, 318 U.S. 109, 116, 63 S.Ct. 477, 482, 87 L.Ed. 645 (1943). Prejudicial error is not found where the appellant fails to prove that the outcome of the case would have been different in the absence of the asserted error. *See Gaub v. Federal Aviation Administration*, 996 F.2d 310 (Table),1993 WL 213757, *2 (10th Cir. 1993).

**Scope of record**

The court first addresses a preliminary matter. Plaintiff contends that this court must review the entire record compiled by the FSA throughout its history of dealings with the plaintiffs, instead of the record presented to and made by the NAD during his hearing. *See* Dk. 39. Plaintiff misunderstands the nature of this appeal.[3]

This court is required to review and examine the record made during the course of the NAD's administrative proceedings. The record on review of an agency order consists of the order involved, any findings or report on which it is based and the pleadings, evidence, and other parts of the proceedings before the agency from which the review is requested. *See* FRAP 16; D.Kan.R. 83.7.1(b)(1); *Nickol v. United States,* 501 F.2d 1389, 1390 (10th Cir.1974). The court's duty is to conduct a "plenary review of the record as it existed before the agency." *Olenhouse*, 42 F.3d at 1575. *See Rapp v. United States Department of Treasury*, 52 F.3d 1510,1515 (10th Cir. 1995). Absent

[3]Plaintiff additionally misstates the function of the National Appeals Division ("NAD"). NAD is not a client of the FSA. Instead, it is an agency of USDA, and its mission is to provide fair and timely hearings and appeals to USDA program participants. The Farm Service Agency ("FSA"), is a separate agency of USDA.

unusual circumstances,[4] the court's limited scope of review prevents it from examining materials that were not presented to the NAD, and restricts its review to the administrative record before the NAD. *See Sheehy v. Johanns*, 2007 WL 656429, 8 (W.D.N.Y. 2007) (rejecting contention that the "record" would include "everything in FSA, USDA, and NAD's possession" related to the farmers instead of just the materials presented to the NAD during the hearings). *See also Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985); *Newton County Wildlife Assoc. v. Rogers*, 141 F.3d 803, 807 (8th Cir. 1998). The court finds no reason to depart from the general rule, so examines solely the record presented to and made by NAD during the plaintiffs' appeal. Plaintiff's motion for summary judgment granting plenary review of plaintiffs' entire FSA record as it appears before FSA shall therefore be denied.

The court additionally notes that it has no duty to search through the trial record to find support for an appellant's arguments. *United States v. Kimler*, 335 F.3d 1132, 1138 (10th Cir. 2003). Instead, it is the duty of the parties to direct the court to specific pages in the record which support their positions. This is particularly important in cases such as this one, where the record to be reviewed consists of thousands of pages.

**Moratorium on acceleration**

Plaintiffs' chief claim is that defendant's acceleration of plaintiffs' debt violated FSA's moratorium policy which prohibited the commencement of any action against a

---

[4]The parties may at any time by stipulation supply any omission from the record or correct a misstatement. FRAP 16; D.Kan.R. 83.7.1(b)(1). The parties have not done so in this case.

debtor who had a discrimination complaint pending against the agency. Defendant

admits that a moratorium policy existed, but denies that the policy protected the

plaintiffs, claiming the defendant had not accepted any of plaintiffs' discrimination claims

as valid at the time of acceleration, as was necessary for protection from acceleration.

The NAD hearing officer agreed with defendant's position.

In finding that no moratorium protected plaintiffs from acceleration, the NAD

hearing officer alluded both to FSA policy and to the law, in stating:

> Indeed, Paragraph 41G of FSA Handbook 1-FLP (Rev. 1, Amend. 1)
> which addresses loan and servicing applications when an applicant has filed a
> civil rights complaint, specifically states that under no circumstance will FSA
> accelerate a debt or foreclose a loan before a discrimination complaint is closed.
> In addition, Section 14002, Subpart A, Title XIV of the 2008 Farm Bill establishes
> a moratorium for all FSA accelerations involving a borrower who has an <u>accepted</u>
> discrimination complaint pending.

R. Tab 7, p. 68 (emphasis in original).

The Farm Bill relied upon by the NAD hearing officer states that the moratorium

on acceleration proceedings applies to farmers who have claims of program

discrimination that are accepted by the defendant as valid. It states:

> (b) [E]ffective beginning on the date of the enactment of this subsection, there
> shall be in effect a moratorium, with respect to farmer program loans ... on all
> acceleration and foreclosure proceedings instituted by the Department of
> Agriculture against any farmer or rancher who-
> (A) has pending against the Department a claim of program discrimination *that is
> accepted by the Department as valid*; or
> (B) files a claim of program discrimination *that is accepted by the Department as
> valid*.

2008 HR 6124, Pub.L. No. 110-246, Sec. 14002, subsection (b) (emphasis added). *See*

R. Tab 7, p. 8-9 (decision of NAD, emphasizing same language as above). The NAD

hearing officer found that at the time of acceleration, plaintiffs had no claims of program

7

discrimination that had been accepted by the Department as valid. R. Tab 7, p. 69 ("I conclude the evidence presented in this appeal supports the conclusion that (the plaintiff) only had four accepted civil rights complaints, and that all are closed."); (Accordingly, I conclude Appellants do not have a pending civil rights complaint, accepted by the OCR, which prohibits FSA from beginning acceleration and foreclosure actions.")

The court finds that the NAD hearing officer erred in relying on this law, because the relevant subsection (b) was not enacted until May 22, 2008,[5] and states that it has no retroactive effect. Defendant's notice of acceleration is dated April 24, 2008, and thus predates the effective date of the law relied on by NAD. Thus the law which limits moratorium-triggering discrimination claims to those which are accepted by the department as valid was not in effect at the time the defendant noticed plaintiffs' about the acceleration.

The NAD hearing officer also alluded to the agency's policy as a basis for his decision, thus the court looks to defendant's policy to see if it justifies the hearing officer's ruling. *See Hall v. U.S. Dept. of Labor*, 198 F.3d 257 (Table) (10th Cir.1999), citing *Vista Hill Foundation, Inc. v. Heckler*, 767 F.2d 556, 559 (9th Cir.1985) (finding the court may affirm if agency's decision is justified by either of alternative grounds set forth

[5] *See* notes to 7 U.S.C.A. § 1981a. Pub.L. 110-234, Title XIV, § 14002(a), May 22, 2008, 122 Stat. 1442; Pub.L. 110-246, § 4(a), Title XIV, § 14002(a), June 18, 2008, 122 Stat. 1664, 2204.) (Pub.L. 110-234, § 14002(a)(2), and Pub.L. 110-246, § 14002(a)(2), made identical amendments which added subsec. (b). Amendments by Pub.L. 110-246, except as otherwise provided, shall take effect on the earlier of June 18, 2008, or May 22, 2008, *see* Pub.L. 110-246, § 4(b), set out in a Repeal of Duplicative Enactment note under 7 U.S.C.A. § 8701.

in agency's decision). The policy alluded to by the NAD hearing officer, captioned,

"Processing Loan and Servicing Applications When an Applicant Files a Discrimination

Complaint," was in effect at the time of the notice of acceleration. Paragraph 41G of

FSA Handbook 1-FLP (Rev. 1, Amend.1). It does not, however, require a discrimination

claim to be "accepted by the Department as valid" to have the effect the plaintiffs desire.

It states simply:

> Under no circumstance will FSA:
> - delay the processing of a loan or servicing application pending the outcome of a *filed* discrimination complaint
> - deny a loan or servicing request because a discrimination complaint has been *filed*
> - *accelerate or foreclose a loan before a discrimination complaint is closed*.

FSA Handbook 1-FLP, Para. 41G (emphasis added). The preceding paragraph,

"Nondiscrimination in FLP," Para 41F, states:

> [7 CFR 15d.4(a)] Any person who believes that he or she (or any specific class of individuals) has been, or is being, subjected to practices prohibited by this part may file on his or her own, or through an authorized representative, a written complaint alleging such discrimination. No particular form of complaint is required. The written complaint must be filed within 180 calendar days from the date the person knew or reasonably should have known of the alleged discrimination, unless the time is extended for good cause by the Director of the Office of Civil Rights or his or her designee. Any person who complains of discrimination under this part in any fashion shall be advised of his or her right to file a complaint as herein provided.
> [7 CFR 15d.4(b) All complaints under this part should be filed with the Director of the Office of Civil Rights, United States Department of Agriculture, Washington, D.C. 20250, who will investigate the complaints. The Director of the Office of Civil Rights will make final determinations as to the merits of complaints under this part and as to the corrective actions required to resolve program complainants. The complaint will be notified of the final determination on his or her complaint.

*Id. See* 7 CFR 15d.4(a), (b).

The record does not reflect any FSA policy in effect prior to April 24, 2008 that

required a civil rights complaint to be "accepted" or "accepted as valid" before it could

trigger the moratorium policy. Instead, FSA policy in effect at the relevant time permitted

civil rights complaints to trigger the moratorium upon being "filed." To be "accepted," a

claim may be reviewed to see if it is complete, has been timely filed, or is within USDA's

jurisdiction. But none of these initial intake matters is relevant in determining whether a

program discrimination complaint has been "filed." This distinction is substantial.

> An ``accepted'' claim under section 14002 is a claim for which OAC has made
> the determination to accept on basic jurisdictional grounds. As explained in the
> Conference Report for the 2008 Farm Bill, ``accepted'' is a procedural term and
> not a statement as to the merits of the program discrimination claim. The
> acceptance of the claim is distinct from the person's filing of a program
> discrimination claim.

Federal Register: August 7, 2009 (Volume 74, Number 151, page 39565.)

The record in this case indicates that the plaintiffs filed a number of

discrimination complaints and documents with the USDA Office of Civil Rights before

the notice of acceleration was issued.

1. On November 28, 1997, plaintiffs filed their first civil rights complaint with the

USDA OCR, complaining that the defendant denied them set aside benefits, offered

them loan restructuring they had not requested, initiated administrative offset without

providing appeal rights or granting family expenses, and provided erroneous information

about the processing of his application. This was accepted as valid, was designated as

Case No. 971128-1254, and was pending for over four years. Defendant then found the

complaint to be untimely and found no discrimination, so closed the case by letter dated

May 24th, 2002. R. Tab 16, 980-82.

2. In 1999, plaintiffs filed their second civil rights complaint, which was accepted

as Case No. 1004082. It was subsequently dismissed for lack of jurisdiction. 00201

findings - Audio only. The court does not find in the record any letter notifying the plaintiffs that this discrimination complaint had been closed.

3.  Between October 8 and November 29, 2002, plaintiffs sent a series of letters to the FSA State Office of Civil Rights, and the OCR. *See* R. Tab 16, 989-1014. These letters, alleging "lying," "cover up fraud," "false documentation" and other matters, were collectively accepted as Case No. 1363232. R. Tab 16, 1014.  On May 14, 2003, the defendant concluded it lacked jurisdiction but forwarded the complaints to the Office of Inspector General. R. Tab 16, 1031. The court does not find in the record any letter notifying the plaintiffs that this discrimination complaint had been closed.

4.  On March 28, 2004, plaintiffs filed another civil rights complaint, but it was treated as supplemental to his earlier complaint so was associated with Case No. 1363232. (Audio only.) The court does not find in the record any letter notifying the plaintiffs that this discrimination complaint had been closed.

5.  In 2005, plaintiffs sent more letters alleging civil rights violations to the agency's OCR.  On June 22, 2005, the agency noticed the plaintiffs of its decision to accelerate their debt. Thereafter, a NAD hearing officer held that FSA erred in sending plaintiffs the wrong attachments to the notice. FSA then cured its error by sending plaintiffs the correct documents by certified mail, followed by regular mail on May 11, 2006. On May 15, 2006, OCR accepted the plaintiff's complaint letter dated August 9, 2005, as valid and assigned it Case No. 2074147. Acceleration of plaintiff's debt was stayed pending the conclusion of that civil rights investigation.  A final agency decision of no discrimination was issued in that case on September 27, 2007.

Thereafter, acceleration proceedings were renewed against the plaintiffs. On

April 24, 2008, FSA notified plaintiffs of the acceleration of their debt and demanded payment. Plaintiffs appealed to the NAD, which found that OCR had no pending civil rights complaints filed by the plaintiffs which they had accepted as valid, and affirmed FSA's acceleration proceedings.

The plaintiff contends that he filed other civil rights complaints which should have triggered the moratorium on acceleration of his debt. The record confirms that plaintiffs filed at least the following complaints with the OCR between September 27, 2007 and April 24, 2008:

1. On October 15, 2007, plaintiffs sent a complaint "against Adjudication Compliance and Office of Civil Rights ... for making final decisions that are arbitrary and capricious and not in accordance with law..." R Tab 16, 1148. The Acting Director of the Office of Adjudication and Compliance responded to plaintiffs that there were no appeal rights pertaining to the OCR administrative process, and confirmed that the September 27, 2007 decision remained the final action regarding the complaint. R Tab 16, 1152.

2. On January 9, 2008, plaintiffs sent a civil rights complaint to the OCR, alleging, among other matters, "retaliation" against the plaintiff "for exposing FSA fraud," and that the Acting Director's decision was "false" and "arbitrary." R Tab 16, 1155. The court does not find in the record any letter notifying the plaintiffs that this discrimination complaint had been rejected or closed.

3. On January 22, 2008, plaintiffs' sent another complaint to the OCR, alleging "ongoing reprisal and non compliance" by certain persons who supplied "false input data" in 1997 to the FSA, which resurfaced in 2007, and for defendant's "refusal to correct the running record." R Tab 16, 1157. The court does not find in the record any

letter notifying the plaintiffs that this discrimination complaint had been rejected or closed.

4. On March 7, 2008, plaintiffs sent another complaint to the OCR, alleging "retaliation, reprisal and non compliance" against the Acting Director for "false and misleading statements he used" in the final agency decision of September 27, 2007. Plaintiffs alleged a conspiracy to defraud, that plaintiffs had exposed defendant's fraud, and that defendants used a "scheme to use fictitious data to destroy data and alter the running record." R Tab 16, 1165-66.[6] The court does not find in the record any letter notifying the plaintiffs that this discrimination complaint had been rejected or closed.

When plaintiffs received the April 24, 2008 notice of acceleration, they claimed they had filed discrimination complaints which had never been closed and thus should have triggered the statutory moratorium on acceleration. The court agrees. Based upon the plain language of the defendant's policy in existence in April of 2008, under no circumstance could FSA accelerate or foreclose plaintiffs' loan before the discrimination complaints filed by plaintiffs were closed. Plaintiffs have shown the court that they timely sent complaints of reprisal to the correct civil rights office, which complaints appear to be pending. No letters at any stage of the civil rights process, from intake through investigation to final determination notified plaintiffs that their civil rights complaints filed in January and March of 2008 were not deemed to be initially filed, or were found to be invalid after investigation, or had been decided against plaintiffs, or were otherwise

---

[6]Plaintiffs later sent other civil rights complaints to OCR but the court does not address them because they were not filed before the notice of acceleration was sent. *See* R. Tab 16, 1173.

closed. The court finds that on the date defendant sent the notice of acceleration, plaintiffs had already filed three civil rights complaints of reprisal by defendant in the farm loan program, and those complaints had not been closed, triggering the moratorium pursuant to defendant's policy at the time.[7]

It is possible, of course, that the moratorium may have been inapplicable to plaintiffs for some reason other than the reasons stated by the NAD hearing officer, but the Tenth Circuit has made it clear that this court cannot examine such matters.

> "[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." 332 U.S. at 196, 67 S.Ct. 1575; *see also Uanreroro v. Gonzales*, 443 F.3d 1197, 1205 (10th Cir. 2006) ("We are not at liberty to search for grounds to affirm that were not relied upon by the agency.") (citing *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004) and *Mickeviciute v. INS*, 327 F.3d 1159, 1162-63 (10th Cir. 2003)).

*Carpio v. Holder*, __ F.3d __, 2010 WL 93107, 12 (10th Cir. 2010). The court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Olenhouse*, 42 F.3d at 1575 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Accordingly, the court finds that the hearing officer abused his discretion by committing an error of law. *See generally United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001).

---

[7] The court expresses no opinion on the wisdom of defendant's moratorium policy, or on the efficiency of processing of civil rights FSA program complaints. It is concerned, however, by references in the record that "the process to notify state and county offices when a civil rights complaint has been filed is a very poor system" R.Tab 18, 1226 (opinion of Ks.FSA State Civil Rights Coordinator); that "FSA recognizes the OCR may have issues." R. Tab 7, 0061 (decision of NAD hearing officer); and that OCR is to "acknowledge receipt of the complaint in writing within 15 calendar days of receipt." R. Tab 19, 1283.

**Remedy**

The relevant statute provides that the reviewing court "shall hold unlawful and set aside agency actions, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Because the agency's decision regarding the moratorium was not in accordance with law, the court shall vacate the NAD hearing officer's decision and remand the case for further administrative proceedings, if any, consistent with this opinion.

**Privacy Act**

Plaintiffs independently assert claims under the Privacy Act, 5 U.S.C. § 552a.[8] Plaintiffs contend that files maintained or used by the USDA, FSA, OCR, and the OGC "contain false information," Dk. 1, p. 4, and that defendant "falsified the file in order to obtain unlawful and unfair finding." Dk. 1, Att. 1, p. 1. Additionally, plaintiffs contend that the FSA failed to respond to numerous requests by plaintiffs to correct their file. *Id.* This court has jurisdiction over this claim pursuant to 5 U.S.C.A. § 552a. Defendant asks the court to dismiss these claims.

This Court accepts all the well-pleaded allegations of the complaint as true and construes them in a light most favorable to the plaintiff. *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 U.S. 858 (1997). But legal conclusions, bare assertions, or merely conclusory allegations in the complaint are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937,

---

[8]Although plaintiffs' Privacy Act claims are not specific, they do not appear to assert that the error made in maintaining the plaintiffs' records is defendant's omission of their civil rights complaints. Instead, separate claims of error appear to be made. *See* Dk. 1.

1949-51 (May 18, 2009). The court determines if the complaint contains enough facts to state a claim to relief that is plausible on its face. *Id*. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, --- U.S. ----, 129 S.Ct. at 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Because plaintiffs appear pro se, the court construes their pleadings and papers liberally, but the court's role is not to act as their advocate. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

Defendant first contends that plaintiffs' Privacy Act claims are barred by the applicable statute of limitations. A two-year statute of limitations governs Privacy Act claims.

> Congress waived the sovereign immunity of the United States when it enacted the Privacy Act but imposed a two-year statute of limitations. The statute of limitations qualifies the waiver of sovereign immunity and "constitutes a limitation on subject matter jurisdiction." *Dahn v. United States*, 127 F.3d 1249, 1252 (10th Cir.1997).

*Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir.) (finding failure to file a Privacy Act claim against the government within the statute of limitations is jurisdictional), *cert. denied*, 537 U.S. 1057 (2002).[9]

### Amendment claim

Read in the light most favorable to the plaintiffs, the complaint attempts to state a claim for failure to amend their records. In a suit for amendment of records, the district court is not to assess the agency's review of the amendment request, but rather is to

---

[9]Plaintiffs' motion to strike the defense of sovereign immunity (Dk. 27) is denied, and defendant is permitted to raise that defense to the extent it has not been waived.

determine for itself whether the request should have been granted. *White v. Office of Personnel Management*, 787 F.2d 660, 663 (D.C. Cir.), *cert. denied*, 479 U.S. 885 (1986); *See* 552a(g)(2)(A).

> A cause of action for failure to amend a record arises under the Act when: (1) an error is made in maintaining the plaintiff's records, (2) the plaintiff was wronged by such error, and (3) the plaintiff either knew or had reason to know of the error. *See Bergman v. United States*, 751 F.2d 314, 316 (10th Cir.1984). A new cause of action does not arise "upon each and every subsequent adverse determination based on erroneous records," otherwise, "the two-year statute would never run." *Id.* at 317.

*Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002). *See* 5 U.S.C. § 552a(g)(1), (5). This case was filed on October 31, 2008. Accordingly, the only Privacy Act claims within this court's jurisdiction are for violations, if any, which occurred after October 30, 2006.

Neither plaintiffs' complaint nor the plaintiffs' notice (Dk. 1) specifies any date for the alleged Privacy Act violations. Most of the plaintiffs' letters in the record [10] allege continuing ill effects from violations occurring in 1997 or other dates before 2006. *See e.g.*, R. Tab 16, 1157 (alleging defendant put "false input data of 1997 into running record surfacing again in Nov. 2007" and that their "refusal to correct the running record is ongoing"); R. Tab 16, 1173 ("my request for correction of records under the Privacy Act in my case file have not been answered..."). "A new cause of action does not arise 'upon each and every subsequent adverse determination based on erroneous records,' otherwise, 'the two-year statute would never run.'" *Harrell v. Fleming*, 285 F.3d 1292,

---

[10] When considering a Rule 12(b)(1) motion to dismiss, the Court may consider matters outside the pleadings. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995).

1293 (10th Cir. 2002) (quoting *Bergman v. United States*, 751 F.2d 314, 316 (10th Cir.1984). Plaintiffs have not raised a material question of fact that any Privacy Act violation occurred after October 30, 2006.

Additionally, even assuming that some Privacy Act claims are timely, plaintiffs fail to specify what errors were made in their records, how those errors adversely affected the plaintiffs in the decisions made by defendant, and what the corrected record should state. Instead, the references in the complaint are to generic violations by defendant which fail to inform this court of the nature of the errors alleged by plaintiffs. These fail to plausibly support a claim for relief.

In a similar vein, the cause of action for amendment of records incorporates an exhaustion requirement. According to the statutory language, plaintiffs must initially seek an amendment from the agency and seek review within the agency before coming to court. *See* 5 U.S.C. §§ 552a(g)(1)(A) & (B); 552a(d)(3) & (1); *Haase v. Sessions*, 893 F.2d 370, 373, 282 U.S.App.D.C. 163, 166 (D.C. Cir. 1990). "[P]remature review ... would invade the obligation to make policy judgments committed in the first instance to the record keeping agency." *McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006), quoting *Dickson v. Office of Personnel Management*, 828 F.2d 32, 40 (D.C. Cir.1987). In 2008, defendant received a letter from plaintiffs which defendant deemed to be insufficiently specific, so defendant requested additional information from plaintiffs, stating:

> The comment in your letter dated May 6, 2008...stating: "We demand correction of records; Under the Privacy Act ... since our case file and running records have been altered and falsified to effect the outcome of the Primary Loan Servicing

and decision making process"[11] does not adequately identify the specific FSA official record amendment redress you are seeking.

R.Tab 16, 1219. Defendant notified plaintiffs that they needed a description of the nature and substance of the correction or amendment requested, and a detailed identification of the text/data currently in the FSA official records that plaintiffs wished to have reviewed for possible amendment. *Id.* Plaintiffs fail to show the court that they responded by providing defendant with the information necessary for defendant to process plaintiffs' request. Accordingly, no exhaustion of the administrative process has been shown as to this claim.

Additionally, plaintiff has not shown any timely and plausible Privacy Act claims which suggest that the plaintiff was wronged by defendant's error. That the plaintiffs' record erroneously contained, for example, the social security number of another person, does not show that plaintiffs were wronged by such error. Dismissal of plaintiffs' amendment claims is thus appropriate for all the reasons stated above.

### Adverse determination claim

Plaintiffs' complaint additionally appears to allege a separate Privacy Act cause of action for failure to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. §§ 552a(e)(5) & (g)(1)(C). In a § 552a(g)(1)(C) suit for damages, the court does not engage in de novo review. Instead, the reviewing court is

---

[11]Plaintiffs were sent notice on April 17, 2006, of the Primary Loan Servicing decision alluded to.

to inquire whether the standard articulated in § 552a(g)(1)(C) has been met. *White*, 787 F.2d at 663.

To establish a claim for damages under this provision, a plaintiff must show four elements:

> (1) he has been aggrieved by an adverse determination; (2) the agency failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the agency's reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the agency acted intentionally or willfully in failing to maintain accurate records.

*Gowan v. United States Dep't of Air Force*, 148 F.3d 1182, 1192 (10th Cir.) (alterations and quotations omitted), *cert. denied*, 525 U.S. 1042 (1998).

This claim fails for the same reasons as set forth above, except failure to exhaust administrative remedies.[12] Even if this court had subject matter jurisdiction to consider the plaintiffs' time-barred Privacy Act claims, it would find that these claims are not sufficiently specific to state a claim. *See Falwell v. Executive Office of the President*, 158 F.Supp.2d 734, 741-42 (W.D.Va.2001) (plaintiff claiming improper maintenance of a record under the Privacy Act must identify the document at issue). *See also Walker v. United States*, No. 93-2728, 1998 WL 637360, *13 (E.D.La.1998) (dismissing Privacy Act claim where plaintiff failed to specify the information that was allegedly disclosed and failed to allege particulars of disclosure), *affirmed* 184 F.3d 816 (5th Cir. 1999) (Table). Plaintiffs' complaint does not plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

---

[12]For this cause of action, no exhaustion is required. *See Hubbard v. EPA*, 809 F.2d 1, 4 (D.C.Cir. 1986); *Nagel v. U.S. Dep't of Health, Educ. and Welfare*, 725 F.2d 1438, 1441 n. 2 (D.C.Cir. 1984).

129 S.Ct. at 1949.

Additionally, this claim fails on the causation element of sections 552a(e)(5) and (g)(1)(C). This element requires the plaintiffs to show that a mistake in the FSA's records caused or led to the agency's adverse determination. *See Hubbard*, 809 F.2d at 4-6. No such evidence has been shown. The court finds it unnecessary to reach the issue whether such inaccuracies were willfully or intentionally made. Judgment as a matter of law in favor of the defendant is warranted on all of the plaintiffs' Privacy Act claims.

IT IS THEREFORE ORDERED that the plaintiffs' claims of Privacy Act violations are dismissed.

IT IS FURTHER ORDERED that the plaintiffs' motion to strike defendant's defense of sovereign immunity (Dk. 27) is denied, and that plaintiffs' motion for summary judgment (Dk. 39) is denied.

IT IS FURTHER ORDERED that the defendant's decision of August 25, 2008 affirming the acceleration of the plaintiffs' debt is vacated and the case is remanded.

Dated this 4th day of March, 2010, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge